FILED
2012 May-29 PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DEBRA A. COLE-SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:11-CV-2857-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER,** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Debra A. Cole-Smith ("Ms. Cole-Smith") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act (the "Act"). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Cole-Smith timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Cole-Smith was a forty-nine-year-old female at the time of her hearing before the administrative law judge (the "ALJ") held on April 26, 2010. (Tr. 75, 60). In terms of education, Ms. Cole-Smith completed the twelfth grade and a year of college. (Tr. 67). Ms. Cole-Smith also obtained a cosmetology degree. (*Id.*). Ms. Cole-Smith's prior vocational experience includes positions as a home health assistant, a dispatcher, and a nursing assistant at a nursing home. (Tr. 74-75).

Ms. Cole-Smith protectively applied for DIB January 10, 2008. (Tr. 12, 101). She maintains that she became disabled on December 25, 2007, due to back disorders and other unspecified arthropathies (*i.e.*, joint diseases). (Tr. 12, 101); *see New Webster's Dictionary and Thesaurus & Medical Dictionary* 898 (1991) (defining arthropathy as "any joint disease"). Her claim was denied initially on February 27, 2008. (Tr. 12, 101).

Ms. Cole-Smith filed a request for a hearing on March 12, 2008. (Tr. 110). A hearing before the ALJ was held on April 26, 2010, in Birmingham, Alabama. (Tr. 12, 60).

On July 29, 2010, the ALJ concluded Ms. Cole-Smith was not disabled as defined by the Act and denied her DIB application. (Tr. 12-32). On August 27, 2010, Ms. Cole-Smith submitted a request for review of the ALJ's decision, which was

2

received on August 30, 2010.  (Tr. 5).  On June 15, 2011, the Appeals Council denied review.  As a result, the ALJ's disability determination that was adverse to Ms. Cole-Smith became the final decision of the Commissioner.  (Tr. 1).

On August 15, 2011, Ms. Cole-Smith initiated her lawsuit asking this court to review the ALJ's decision.  (Doc. 1).  On January 5, 2012, Ms. Cole-Smith filed a brief (Doc. 9) in support of her appeal, and on February 2, 2012, the Commissioner answered with his responsive brief.  (Doc. 10).  Ms. Cole-Smith elected not to file a reply.  This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such

relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

---

[1] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through April 19, 2012.

be expected to last for a continuous period of not less than twelve (12) months."  20

C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant

must provide evidence of a "physical or mental impairment" which "must result from

anatomical, physiological, or psychological abnormalities which can be shown by

medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §

404.1508.

     The Regulations provide a five-step process for determining whether a claimant

is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in

sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir.

1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the

claimant has satisfied steps one and two, she will automatically be found disabled if

she suffers from a listed impairment.  If the claimant does not have a listed

impairment but cannot perform her work, the burden shifts to the Secretary to show

5

that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Cole-Smith had not engaged in substantial gainful activity since the alleged onset date of her disability, *i.e.*, December 25, 2007.  (Tr. 30 ¶ 1). Thus, the claimant satisfied step one of the five-step test.  20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following 'severe' impairments of tennis elbow; very slight narrowing of the left hip joint with phleboliths in the left pelvis and carpal tunnel syndrome." (Tr. 30 ¶ 3).  Accordingly, the ALJ concluded that Ms. Cole-Smith satisfied the second step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Cole-Smith did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 31 ¶ 3).  Ms. Cole-Smith does not challenge this determination on appeal.

Regarding Ms. Cole-Smith's residual functional capacity ("RFC"), the ALJ found:

The claimant retains the . . . [ability] to perform light work which allows no driving, work at unrestricted heights, no push or pull with her upper extremities, no overhead reaching or lifting with her right arm; no pushing or pulling with her left leg, no climbing and occasional turning of her head/neck to the left side.  She should be permitted to sit or stand at her option and can only occasionally perform fine and gross manipulation.

(Tr. 31 ¶ 5).[2]

In support of his RFC determination, the ALJ gave little weight to the physical capacities evaluation of Ms. Cole-Smith (Tr. 411–13) performed by the consultative examiner Guy B. Dewees ("Dr. Dewees").  (*See* Tr. 29 "These forms, however, are simply not consistent with his own narrative or other documents contained in the evidence of record, and are entitled to little persuasion.")).  Based upon his medical assessment, Dr. Dewees determined that Ms. Cole-Smith "would be unable to sustain

---

[2]  The Regulations define light work as:

(b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through April 19, 2012).

an eight hour work day."  (Tr. 29).

Against this backdrop, and in reliance upon testimony from a vocational expert, the ALJ concluded that Ms. Cole-Smith's impairments prevented her from performing past relevant employment.  (Tr. 29; Tr. 31 ¶ 9).  Because of the ALJ's finding that Ms. Cole-Smith was unable to perform past relevant work, it was necessary to continue to step five of the sequential analysis.  (Tr. 29-30).

Using the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ determined that Ms. Cole-Smith was capable of "performing light and sedentary jobs which exist in significant numbers in the national economy."  (Tr. 30).  Examples of such possible light positions included employment as an information clerk and control area checker. (*Id.*). Potential sedentary employment was as a surveillance system monitor.  (*Id.*). Accordingly, the ALJ concluded Ms. Cole-Smith was not disabled as defined by the Social Security Act, and denied her DIB claim.  (Tr. 30; Tr. 32).

## ANALYSIS

In this appeal, Ms. Cole-Smith raises several different issues, including whether the ALJ erred in his rejection of the medical source opinion[3] provided by Dr.

---

[3]  "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an

Dewees (*i.e.*, "I do not think that she could work at any job eight hours a day, 40 hours a week, 50 weeks a year, even if such a job were of a light or sedentary nature. I consider her to be totally and permanently disabled by the above-outlined medical problems.") (Tr. 418), and in formulating Ms. Cole-Smith's RFC without the benefit of any additional vocationally-related opinion evidence from a physician. The court turns to these issues first and agrees with Ms. Cole-Smith that, under the circumstances of her case, the Commissioner has committed reversible error.[4]

### A. The ALJ's Committed Reversible Error in His Evaluation and Weighing of the Medical Opinion Evidence.[5]

In *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987), the Eleventh Circuit explained:

> In assessing the medical evidence in this case, <u>the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor</u>. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Further, he was required to accord considerable weight to appellant's treating physician's opinion absent good cause for

individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

[4] As a result, the court does not reach the merits of the other issues presented on appeal.

[5] The following framework, analysis, and disposition are persuasively supported by the undersigned's decision in *Gaught v. Astrue*, No. 6:11-2681-VEH (Docs. 12, 13) (May 14, 2012) (reversing and remanding due to ALJ's error in treatment of medical opinion evidence).

not doing so. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir.1985) (per curiam). The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam). Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985) (per curiam).

The ALJ, here, disregarded these rules in assigning weight to the various medical opinions. The only opinions that indicated that appellant could meet the medium work requirements of 20 C.F.R. 404.1567(c) (1986) were those of the nonexamining physicians, Drs. Thomas and Register. Their opinions were entitled to little weight, however, and could not serve as substantial evidence.

*Sharfarz*, 825 F.2d at 279-80 (emphasis added).

Here, the ALJ has committed legal error because his RFC determination is in apparent conflict with the above rules applicable to medical source opinions and, regardless, his decision is not supported by substantial evidence. Preliminarily, the ALJ's explanation for disregarding Dr. Dewees's examination-based opinion is flawed and difficult to follow. (Tr. 29; *see also* Tr. 411–13; Tr. 415-18). Moreover, his dubious rationale for dismissing Dr. Dewees's opinion is not defended by the Commissioner. (*See generally* Doc. 9).

In an effort to explain why he discounted Dr. Dewees's report, the ALJ indicated that the "forms . . . are not consistent with his own narrative or other

<u>documents</u> contained in the evidence of record, and are entitled to <u>little persuasion</u>."

(Tr. 29 (emphasis added)). In making this assertion, however, the ALJ pointed to

neither any narrative nor medical record evidencing such an inconsistency.

The ALJ further reasoned:

> It is noted that the claimant underwent the examination which formed
> the basis of the opinion in question, not in an attempt to seek treatment
> for symptoms, but rather, <u>through attorney referral</u> and in connection
> with an effort to generate evidence for the current appeal. Further, the
> doctor was <u>presumably paid for the report</u>. <u>Although such evidence is
> legitimate and deserves consideration, the context in which it was
> produced cannot be entirely ignored</u>. The doctor apparently relied quite
> heavily on the subjective report of symptoms and limitations provided
> by the claimant, and seemed uncritically to accept as true most, if not all,
> of what the claimant reported. Yet, as explained elsewhere in this
> decision, there exist good reasons for questioning the reliability of the
> claimant's subjective complaints.

(Tr. 29 (emphasis added)). Thus, while the ALJ confusingly acknowledged that Dr.

Dewees's vocational evaluation of Ms. Cole-Smith "deserve[d] consideration," he

nonetheless gave little weight to it,[6] on the basis that Dr. Dewees was retained by the

claimant's lawyer and was probably paid for the consultation. Assuming that both

of these statements are factually true, the Commissioner did not cite to, and the court

is unaware of, any controlling authority which embraces these particular factors as

---

[6] The ALJ never indicated which portions, if any, of Dr. Dewees's opinions he
credited. Instead, it appears to the court that the ALJ disregarded Dr. Dewees's
consultative findings in their entirety.

appropriate reasons for rejecting a consulting physician's opinion, whether such a doctor is retained by a claimant or the Commissioner.

As for the ALJ's third point about Dr. Dewees's "quite heav[y]" reliance upon Ms. Cole-Smith's subjective allegations of pain, while, if true,[7] this could potentially support perhaps a partial rejection of Dr. Dewees's opinion, by itself, it is an inadequate justification to ignore the report entirely, especially when nowhere else in his decision did the ALJ cite to an alternative physical capacity evaluation or medical source opinion provided by a physician as underlying support for his RFC determination.

In fact, the only other physical capacity assessment that the court was able to locate in the record consistent with the ALJ's determination that Ms. Cole-Smith was able to perform a reduced range of light and sedentary work was one performed by a non-examining agency medical consultant named Mark Swink ("Mr. Swink") on February 27, 2008.  (Tr. 338-45).  The ALJ made no mention of this non-examining report generated by a non-physician in his opinion.

_____

[7]  The ALJ stated that Dr. Dewees "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed uncritically to accept as true most, if not all, of what the claimant reported."  (Tr. 29). Thus, the ALJ used several qualifiers when stating this particular reason, and, regardless, never specified what made him believe that Dr. Dewees's vocational conclusions were more subjectively-based as opposed to objectively-driven.

However, when the court compares some of the work-related restrictions ultimately placed upon Ms. Cole-Smith by the ALJ with Mr. Swink's evaluation (*compare* Tr. 341 (finding limitations with respect to gross and fine manipulation), *with* Tr. 31 ¶ 5 ("She should be permitted to sit or stand at her option and <u>can only occasionally perform fine and gross manipulation.</u>") (emphasis added)), it appears that the ALJ implicitly adopted at least a part of Mr. Swink's physical capacity assessment which, under *Sharfarz*, was entitled to little weight <u>even if it had been generated by a doctor</u> over the competing opinion offered by Dr. Dewees.  Moreover, pursuant to *Sharfarz*, the non-examining, non-physician assessment of Ms. Cole-Smith by Mr. Swink, *a fortiori*, cannot serve as substantial evidence in support of the ALJ's disability decision.

**B.      In the Absence of a Supporting Medical Source Statement or a Physical Capacities Evaluation by a Physician That Considers the Impact of Ms. Cole-Smith's Severe Impairments, the ALJ's RFC Determination That She Can Perform a Reduced Range of Light Work Is Not Supported by Substantial Evidence.**

Alternatively to running afoul of *Sharfarz*, the lack of a medical source opinion or a physical capacities evaluation conducted by a physician that substantiates Ms. Cole-Smith's ability to perform a reduced range of light/sedentary work given her

severe impairments constitutes reversible error.[8] Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

The court acknowledges that the ALJ did refer within his opinion to a host of records from various medical providers pertaining to Ms. Cole-Smith. (*See* Tr. 17-27 (summarizing medical evidence spanning from August 8, 2007, to April 19, 2010)). However, for the most part, such documentation is reported merely as raw physical findings applicable to Ms. Cole-Smith. (*See, e.g.*, Tr. 320-29 (collection of medical records from UAB Medical West); Tr. 371-76 (collection of physical examination and recommendation records from Joe L. Gerald, M.D., relating to carpal tunnel diagnosis); Tr. 394-402 (collection of medical records from ACIPCO Medical Group,

---

[8] The undersigned has rendered several other comparable decisions which have reversed the Commissioner due to an underdeveloped record and/or an inadequately supported residual functional capacity ("RFC") determination from which the framework, analysis, and disposition of this alternative analysis in favor of remand persuasively flow. *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding when RFC finding is not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Howard v. Astrue*, No. 3:10-CV-0527-VEH, (Docs. 15, 16) (Dec. 16, 2010) (same); *Stewart v. Astrue*, No. 5:11-CV-2103-VEH, (Docs. 10, 11) (May 14, 2012) (same).

including X-ray results and radiology report)).  Moreover, with the sole exception of the documents provided by Dr. Dewees (which the ALJ disregarded), none of these records includes an opinion about the impact of  Ms. Cole-Smith's impairments in <u>vocational</u> terms or attaches a physical capacities evaluation of her.  *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'" (quoting *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 292 (1st Cir. 1986))).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers'[s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996).  In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.*  In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted

15

> Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations.  Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers' [s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." (emphasis added) (citing *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir.1991))); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." (emphasis added) (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 893 F.2d 401, 403 (1st Cir.1989))); *cf. Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1973) ("To meet such a *prima facie* case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases,  a lay person such as an ALJ is not able to discern Ms. Cole-Smith's work-related exertional

abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records.  Moreover, the lack of a medically-determined physical RFC that supports the ALJ's RFC determination is particularly critical here when, undisputably, Ms. Cole-Smith is not able to perform relevant past work given the additional job-related restrictions that the ALJ placed on her at the light/sedentary exertional level.  As the undersigned has previously recognized in another fifth-step burden decision that similarly resulted in a remand for further development of the claimant's functional abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).   "Such silence is equally susceptible to either inference, therefore, no inference should be taken."  *Id.*

*Clemmons v. Barnhart*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007); *cf. Reeves v. Heckler*, 734 F.2d 519, 522 n.1 ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (citing *Ford v. Sec'y of Health & Human Servs*, 659 F.2d 66, 69 (5th Cir.1981) (Unit B))).[9]

Therefore, in the absence of a medical source statement and/or any physical

---

[9]  In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the Unit B panel of the former Fifth Circuit handed down after September 30, 1981.

capacities evaluation conducted on Ms. Cole-Smith by a physician that corroborates the ALJ's determination that she is capable of performing light and sedentary work with certain non-exertional restrictions despite her severe physical impairments of (i) tennis elbow; (ii) very slight narrowing of the left hip joint with phleboliths in the left pelvis; and (iii) carpal tunnel syndrome, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.").

Likewise, the ALJ's determination that Ms. Cole-Smith can perform light and sedentary work with certain non-exertional restrictions is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed on the basis of this alternative reasoning, and the case remanded for further proceedings consistent with this memorandum opinion.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the

Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 29th day of May, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge